# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

DAVID GOINGS,

    Plaintiff,

vs.

CHICKASAW COUNTY, IOWA; MARTIN LARSEN, Individually and in His Official Capacity; and TODD MILLER, Individually and in His Official Capacity,

    Defendants.

No. 06-CV-2063-LRR

**ORDER**

_____

## TABLE OF CONTENTS

| | | |
|---|---|---|
| *I.* | *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *2* |
| *II.* | *RELEVANT PRIOR PROCEEDINGS* . . . . . . . . . . . . . . . . . . . . . . . | *2* |
| *III.* | *JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *3* |
| *IV.* | *PLAINTIFF'S FAILURE TO COMPLY WITH THE LOCAL RULES* . . . . . | *3* |
| *V.* | *LEGAL STANDARD FOR SUMMARY JUDGMENT* . . . . . . . . . . . . . . . | *7* |
| *VI.* | *SUMMARY JUDGMENT FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . | *8* |
| *VII.* | *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *11* |
| |    *A.    Arguments* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *11* |
| |    *B.    Chickasaw County* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *11* |
| |    *C.    Sheriff Larsen* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *12* |
| |    *D.    Chief Deputy Miller* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *13* |
| |        *1.    Direct Liability* . . . . . . . . . . . . . . . . . . . . . . . . . . . | *13* |
| |        *2.    Supervisor Liability* . . . . . . . . . . . . . . . . . . . . . . . . | *16* |
| |        *3.    Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *17* |
| *VIII.* | *SANCTIONS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *18* |
| *IX.* | *DISPOSITION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | *19* |

## I. INTRODUCTION

The matter before the court is the Second Motion for Summary Judgment ("Second Motion") (docket no. 71), which was filed by Defendants Chickasaw County, Iowa; Martin Larsen; and Todd Miller.

## II. RELEVANT PRIOR PROCEEDINGS

The procedural history of this case is set forth in prior orders, *see, e.g.*, Order (docket no. 69), at 3-5; Order (docket no. 65), at 1-2, and the court need not repeat it here. At present, the only surviving claim in this case is Plaintiff David Goings's Excessive Force Claim. In his Excessive Force Claim, Plaintiff alleges that Defendants violated 42 U.S.C. § 1983 when they "us[ed] excessive force against [him] in the course of his arrest, causing physical injury." Complaint (docket no. 1), at ¶ 21.

On December 18, 2007, Defendants filed the Second Motion. On January 28, 2008, David Goings filed "Plaintiffs [sic] David Goings [sic] Resistance to Defendants' Motion [sic] for Summary Judgment" (docket no. 78). Under a separate docket entry, Plaintiff then filed "Resistance to Chickasaw County [sic] Second Material Fact Statement" (docket no. 79-1), "Plaintiffs' [sic] Appendix in Support of Resistance to Second Motion for Summary Judgment Filed by Chickasaw County, Martin Larsen and Todd Miller" (docket nos. 79-2 through 79-4), a "Table of Contents" (docket no. 79-5), and Memorandum in Support of Resistance to Chickasaw County's [sic] Second Motion [sic] Summary Judgment" (docket nos. 79-6 through 79-7). On February 1, 2008, Defendants filed a Reply.[1]

The Second Motion is fully submitted and ready for decision. The court shall decide the Second Motion without oral argument, pursuant to Local Rule 7.c.

---

[1] On February 13, 2008, Plaintiff filed a Request to Supplement Plaintiffs' [sic] Appendix in Support of Resistance to Second Motion for Summary Judgement [sic] Filed by Chickasaw County[,] Martin Larsen and Todd Miller ("Request") (docket no. 81). On February 26, 2008, the court denied the Request. Order (docket no. 82), at 1.

### III. JURISDICTION

The court has federal question jurisdiction over the Excessive Force Claim. In the Excessive Force Claim, Plaintiff alleges that Defendants violated 42 U.S.C. § 1983, a law of the United States. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the . . . laws . . . of the United States.").

### IV. PLAINTIFF'S FAILURE TO COMPLY WITH THE LOCAL RULES

As a threshold matter, Defendants ask the court to strike Plaintiff's resistance materials. Defendants present the court with at least five independent reasons why striking Plaintiff's resistance materials or portions thereof is appropriate.

First, Defendants point out that Plaintiff impermissibly combined his Local Rule 56.b.2 response to Defendants' Local Rule 56.a.3 Second Material Fact Statement (docket no. 71-3) ("individual responses") and his Local Rule 56.1.b.3 statements of additional material fact ("statements of additional material fact") into one document, the "Resistance to Chickasaw County [sic] Second Material Fact Statement" (docket no. 79-1).

Second, Defendants point out that, on numerous occasions, the impermissibly combined individual responses and statements of additional material fact are not "supported by references to those specific pages, paragraphs or parts of the pleadings, depositions, answers to interrogatories, admissions, exhibits, and affidavits that support the statement[s], with citations to the appendix containing [those] part[s] of the record." LR 56.b. It is settled that non-movants who fail to comply with Local Rule 56.b do so at their own peril, because the court is not required to "'engag[e] in the proverbial search for a needle in the haystack'" in resolving a motion for summary judgment. *See Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1032 (8th Cir. 2007) (discussing identical local rule in the Southern District of Iowa and affirming district court's decision to deem all of the movant's statements of material fact to be admitted) (quoting *Nw. Bank & Trust Co. v. First Ill. Nat'l Bank*, 354 F.3d 721, 725 (8th Cir. 2003)); *see also id.* ("Courts have

neither the duty nor the time to investigate the record in search of an unidentified genuine issue of material fact to support a claim or a defense.").

Third, Defendants point out that many of the impermissibly combined individual responses and statements of additional material fact are inadmissible in a court of law, because they are variously argumentative, non-responsive, immaterial or state legal conclusions. It is settled that such statements are inadmissible in a summary judgment proceeding. *See, e.g., Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995) (holding that a witness could not testify as to a legal issue); *see also Joseph P. Caulfield & Assocs., Inc. v. Litho Prods., Inc.*, 155 F.3d 883, 892 (7th Cir. 1998) (stating that a party's "voluminous, frequently inadmissible, and argumentative submissions at summary judgment were inconsistent with proper practice under [Rule 56]").

Fourth, Defendants point out that, in the "Supplemental Affidavit of Lewine Goings-Boucher" (docket no. 79-2, at 4-5), which is dated January 28, 2008 and was prepared in the course of resisting the Second Motion, Lewine Boucher-Goings a/k/a Lewine Goings-Boucher, testifies that she saw law enforcement officers kicking and hitting Plaintiff. In a prior deposition conducted on June 6, 2007, however, Lewine Boucher-Goings testified that she did not see law enforcement officers kick Plaintiff or use any physical force against him, except for a push to the ground in the course of his arrest. It is settled that district courts need not countenance such litigation tactics. *See Herring v. Can. Life Assurance Co.*, 207 F.3d 1026, 1030 (8th Cir. 2000) ("[I]f testimony under oath could be 'abandoned many months later by the filing of an affidavit, probably no cases would be appropriate for summary judgment.'") (quoting *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1366 (8th Cir. 1983)).

Fifth, Defendants point out that, in the "Supplemental Affidavit of Tilleen Goings-Boucher" (docket no. 79-2, at 6-7), which is dated January 28, 2008 and was prepared in the course of resisting the Second Motion, Tilleen Goings-Boucher a/k/a Tilleen Boucher-

4

Goings, testifies that she saw a law enforcement officer "hit, kick and spit" on Plaintiff. Defendants point out that, in his previous interrogatory answers, Plaintiff did not identify Tilleen Goings-Boucher as possessing undisclosed factual information having the potential to substantially broaden the basis for his Excessive Force Claim beyond an allegation of a kick and an epithet. It is settled that counsel for Plaintiff had a duty to supplement such interrogatory answers in a timely manner. Fed. R. Civ. P. 26(e); *see, e.g., Havenfield Corp. v. H & R Block, Inc.*, 509 F.2d 1263, 1272 (8th Cir. 1975) (construing predecessor version of Rule 26(e)).

Upon review of the entire record, the court finds that all of Defendants' arguments have merit for the reasons and legal authority set forth above and for those reasons expressed in Defendants' Reply (docket no. 80). The "Supplemental Affidavit of Lewine Goings-Boucher" (docket no. 79-2) is particularly troublesome. As has become commonplace in the instant action, Plaintiff's witnesses keep changing their testimony without explanation. Counsel for Plaintiff is clearly attempting to use a well-crafted affidavit to "create sham issues of fact in an effort to defeat summary judgment." *Am. Airlines, Inc. v. KLM Royal Dutch Airlines, Inc.*, 114 F.3d 108, 111 (8th Cir. 1997). As the Eighth Circuit Court of Appeals has stated:

> [A] party should not be allowed to create issues of credibility by contradicting [her] own earlier testimony. Ambiguities and even conflicts in a deponent's testimony are generally matters for the jury to sort out, but a district court may grant summary judgment where a party's sudden and unexplained revision of testimony creates an issue of fact where none existed before. Otherwise, any party could head off a summary judgment motion by supplanting previous depositions ad hoc with a new affidavit, and no case would ever be appropriate for summary judgment.

*Wilson v. Westinghouse Elec. Corp.*, 838 F.2d 286, 289 (8th Cir. 1988) (internal citations and quotation marks omitted). The undersigned does not tolerate perjury or the

subordination thereof.

Accordingly, the court grants Defendants' request to strike Plaintiff's resistance materials. Specifically, the court strikes all of Plaintiff's resistance materials and deems it appropriate to admit all of the individual statements of material fact in Defendants' Local Rule 56.a.3 Second Material Fact Statement (docket no. 71-3). *See, e.g.*, LR 1.f ("A failure to comply with the Local Rules may be sanctioned by the court in any appropriate manner. Sanctions may include, but are not limited to, the exclusion of evidence, the prevention of witnesses from testifying, the striking of pleadings or other filings, and the imposition of attorney fees and costs."); LR 56.b ("The failure to respond, with appropriate citations to the appendix, to an individual statement of material fact constitutes an admission of that fact."). This sanction is appropriate under the totality of the circumstances. The court has repeatedly admonished Plaintiff's counsel for violating the Local Rules, in some instances for precisely the same violations committed here. *See, e.g.*, Order (docket no. 28), at 1 (finding Plaintiff's counsel violated Local Rule 7.1.1 (2006)[2]); Order (docket no. 43), at 5-10 (finding Plaintiff's counsel violated Local Rule 26.1.b); Order (docket no. 63), at 1 (finding Plaintiff's counsel violated Local Rule 56.1.g); Order (docket no. 64), at 1 (finding Plaintiff's counsel violated Local Rule 7.1.1); Order (docket no. 65), at 4 n.2 (finding Plaintiff's counsel violated Local Rule 56.1 in two respects; Plaintiff's counsel (1) impermissibly combined a Local Rule 56.1.b.2 response and a Local Rule 56.1.b.3 statement of additional material facts into one document and (2) such document repeatedly failed to respond properly to portions of Defendants' statement of material facts not in dispute); Order (docket no. 69), at 7 n.5 (finding Plaintiff's counsel violated Local Rule 56.1. in same two respects); Order (docket no. 76), at 4-5 (finding Plaintiff's counsel violated Local Rule 16.f and a prior court order). Simply put, Plaintiff's counsel continues to flout the Local Rules in spite of repeated warnings to cease

---

[2] The Local Rules were renumbered in 2008.

and desist.[3]

Accordingly, the court strikes all of Plaintiff's resistance materials and deems it appropriate to admit all of the individual statements of material fact in Defendants' Local Rule 56.a.3 Second Material Fact Statement (docket no. 71-3).

## V. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see, e.g., Baum v. Helget Gas Prods., Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006) ("Summary

---

[3] The court notes that the entirety of Plaintiff's resistance materials were filed improperly, insofar as the various items therein were not filed "under the same docket entry." LR 56.b. Although not mentioned in Defendants' Reply, this is an independent, alternative reason for striking all of Plaintiff's resistance materials.

judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)).

## VI. SUMMARY JUDGMENT FACTS

As viewed in the light most favorable to Plaintiff, the material facts are these:[4]

On September 8, 2004, at approximately 5:30 p.m., Chickasaw County Deputy Sheriff Kevin Rieck ("Deputy Rieck") called City of Nashua Police Officer Paul Becthold ("Officer Becthold"). Deputy Rieck asked Officer Becthold to help him dispose of some marijuana in rural Nashua, Iowa. Officer Becthold agreed.

When Officer Becthold arrived at the scene, he met five fellow law enforcement officers: Deputy Rieck, Chickasaw County Deputy Sheriffs Dennis Sanders ("Deputy Sanders") and Reed Palo ("Deputy Palo"), Chickasaw County Chief Deputy Todd Miller ("Chief Deputy Miller") and Iowa Division of Narcotics Enforcement Special Agent Scott Green ("Special Agent Green"). Officer Becthold helped them destroy the marijuana.

Approximately twenty minutes after Officer Becthold arrived, Deputy Rieck told Officer Becthold that he "had heard a ruckus in [an] adjoining woods." Second Material

---

[4] These facts are drawn entirely from Defendants' Second Material Fact Statement (docket no. 71-3) for the reasons stated in Part IV of the instant Order. However, the Second Material Fact Statement itself contains two different versions of the facts: a version of the facts that is attributed to Plaintiff and a law enforcement officer's version of the facts. Where these two versions of the facts conflict, the court only recites the version of the facts that is attributed to Plaintiff, because it is more favorable to Plaintiff. *Baer Gallery*, 450 F.3d 816, 820 (8th Cir. 2006). The court declines to take judicial notice of any evidence presented to the court in prior motions or set forth in prior orders; the court only considers the summary judgment record presently at hand.

Fact Statement (docket no. 71-3), at ¶ 16. Deputy Rieck told Officer Becthold to move to a nearby farmhouse to intercept anyone who might be returning home from the woods. Deputy Palo went with Officer Becthold to the farmhouse.

Deputy Palo confirmed that no one had entered or left the farmhouse. A dispatcher then called Deputy Palo to a car accident, and he left the scene altogether. Officer Becthold began to search a wooded area west of the farmhouse.

Suddenly, Officer Becthold saw a "red baseball cap pop up in [a] beanfield" about fifty to seventy yards away from his position. *Id.* at ¶ 18. Officer Becthold immediately recognized Plaintiff wearing the red baseball cap; Officer Becthold knew Plaintiff. Officer Becthold pointed his firearm at Plaintiff and ordered him to put his hands in the air. Officer Becthold moved towards Plaintiff and repeatedly shouted "raise your arms."

Plaintiff raised his arms in response to Officer Becthold's commands. Plaintiff walked toward Officer Becthold as Officer Becthold approached Plaintiff.

Officer Becthold pushed Plaintiff to the ground, handcuffed him and pulled him up. Suddenly, "half a dozen [law enforcement] officers arrive[d] at the scene." *Id.* at ¶ 7. Plaintiff asked "What is going on?" and "What are you arresting me for?," but the law enforcement officers did not answer. Although Plaintiff previously had dealt with members of the Chickasaw County Sheriff's Department, he could not identify any of the law enforcement officers who arrived to assist Officer Becthold.

The law enforcement officers forced Plaintiff to the ground in a face-down position. While Plaintiff was being forced to the ground, one of the law enforcement officers kicked Plaintiff in the ribs on the right side of his body. A law enforcement officer also called Plaintiff a "faggot." Plaintiff does not know who forced him to the ground, who kicked him or who called him a "faggot."

The law enforcement officers then handcuffed Plaintiff behind his back[5] and shackled his legs. Plaintiff does not know who restrained him, although he believes that Chief Deputy Miller was present because he later encountered Chief Deputy Miller in a patrol car.

While the law enforcement officers were restraining Plaintiff on the ground, Plaintiff's niece, Tilleen Goings-Boucher, threatened to kick Officer Becthold. Officer Becthold made eye contact with Tilleen Goings-Boucher as she brought her foot backwards to kick Officer Becthold, and Tilleen Goings-Boucher decided not to kick Officer Becthold.

Plaintiff remained on the ground in a face-down position for approximately thirty seconds before the law enforcement officers assisted him up. They transported Plaintiff to Chief Deputy Miller's patrol car.

While sitting in Chief Deputy Miller's patrol car, Plaintiff heard radio calls indicating that the law enforcement officers had asked Chickasaw County Sheriff Martin Larsen ("Sheriff Larsen") to come to the scene and take Plaintiff to the Chickasaw County Jail ("Jail"). When Sheriff Larsen arrived, he uncuffed Plaintiff's leg shackles and allowed him to ride in the front seat of a patrol car on the trip to the Jail. The trip lasted approximately fifteen to twenty minutes. Plaintiff did not tell Sheriff Larsen that someone, possibly one of Sheriff Larsen's deputies, had kicked Plaintiff in the ribs.

Sheriff Larsen booked Plaintiff into the Jail at 7:14 p.m. As a part of the booking process, Sheriff Larsen asked Plaintiff a number of routine questions. For example, Sheriff Larsen asked Plaintiff if he needed medical treatment, if he had any visible signs of trauma, illness or infection, and if he had any medical problems. Plaintiff answered "no" to all of these questions.

On September 9, 2004, at approximately 6:00 p.m., Plaintiff bonded out of the Jail. Plaintiff admits that he was treated well at the Jail and had no problems with the Jail staff.

---

[5] Plaintiff appears to claim that he was handcuffed twice.

Further, Plaintiff did not seek out or receive attention from any doctors, physicians, social workers, psychiatrists or incur any medical expenses as a result of his arrest on September 8, 2004. He did, however, find it difficult to move for a period of time. He rested for a month and took over-the-counter medications to ease his pain.

## VII. ANALYSIS

### A. *Arguments*

In the Motion, Defendants present the court with a series of alternative arguments and request that the court dismiss Plaintiff's Excessive Force Claim. Defendants argue: (1) Plaintiff cannot prove more than a *de minimus* use of force; (2) Plaintiff cannot prove more than a *de minimus* injury; and (3) Plaintiff cannot prove liability as to any of the three defendants. In what follows, the court only considers Defendants' argument that Plaintiff cannot prove liability as to any of the three defendants.[6] The court addresses each Defendant's liability in turn.

### B. *Chickasaw County*

Plaintiff apparently asserts that Chickasaw County is liable for the alleged unconstitutional actions of its employees. In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that plaintiffs cannot use § 1983 to impose *respondent superior* or vicarious liability. *Monell* stands for the proposition that § 1983 liability only extends to those defendants who, in some way, cause the constitutional injury. *City of Okla. City v. Tuttle*, 471 U.S. 808, 818 (1985). Courts cannot find causation merely because of an employment relationship. *Id.*

To succeed on a § 1983 claim against a city or county a plaintiff must make a showing of an official policy or widespread custom that resulted in the constitutional injury. *Mann v. Yarnell*, 497 F.3d 822, 828 (8th Cir. 2007). "Proof of a single incident

---

[6] In other words, the court assumes without deciding that a single kick to the ribs, resulting in a month's worth of pain, constitutes excessive force.

of unconstitutional activity," absent an official municipal or county policy, "is not enough to impose liability." *Id.* (citing *Tuttle*, 471 U.S. at 823). The record before this court presents only a single incident of allegedly unconstitutional activity—the kick to Plaintiff's ribs.[7] This single incident does not rise to an official policy or widespread custom of excessive force.

Accordingly, the court shall grant summary judgment in favor of Chickasaw County.

### C. *Sheriff Larsen*

Plaintiff asserts that Sheriff Larsen is liable for the alleged unconstitutional actions of his subordinates. A supervisor can be held liable for an employee's actions if "the supervisor knew about the conduct and facilitated it, approved it, condoned it, or turned a blind eye for fear of what he or she might see." *Ottman v. City of Independence*, 341 F.3d 751, 761 (8th Cir. 2003) (citing *Ripson v. Alles*, 21 F.3d 805, 809 (8th Cir. 1994)). "Mere negligence in failing to detect and prevent a subordinate's conduct is not enough for liability under [§] 1983." *Ripson*, 21 F.3d at 809 (citing *Jones v. City of Chi.*, 856 F.2d 985, 992 (7th Cir. 1988)).

The uncontested facts show that Sheriff Larsen arrived at the scene after the alleged kick occurred. Nothing in the record indicates that Sheriff Larsen knew about the alleged kick until Plaintiff filed this lawsuit. Plaintiff did not say anything to Sheriff Larsen about the kick during the car ride to the Jail or at any time during his stay at the Jail. Plaintiff did not even complain of any pain that would have suggested that the officers had used excessive force. Plaintiff does not provide any evidence that the officers at the scene had previously used excessive force, that they were prone to violence, or that Sheriff Larsen

---

[7] The court does not consider, on an independent basis, Plaintiff's allegation that one of the officers called him a "faggot." No matter how reprehensible, "name calling is not a constitutional violation." *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (citing *Ellingburg v. Lucas*, 518 F.2d 1196, 1197 (8th Cir. 1975) (per curiam)).

was in any way deficient in training them. Nothing in the record connects Sheriff Larsen to the alleged kick. *Cf. Brown v. Fortner*, No. 06-3743, 2008 WL 564705, at *4 n.1 (8th Cir. Mar. 4, 2008) ("A claim pursuant to § 1983 cannot be based upon vicarious liability . . . so [the defendant] must have made—or at least been aware of—the [unconstitutional acts] to be held accountable for them." (Citation omitted.)).

Accordingly, the court shall grant summary judgment in favor of Sheriff Larsen.

### D. *Chief Deputy Miller*

Plaintiff asserts that Chief Deputy Miller is liable under § 1983 because he either used excessive force against Plaintiff or because of his role as a supervisory officer at the scene. The court addresses each argument, in turn.

#### 1. *Direct Liability*

Plaintiff asserts that a genuine issue of fact exists over whether Chief Deputy Miller kicked Plaintiff. In his deposition, Plaintiff testifies that six officers converged on him during his arrest, threw him to the ground and then one of them kicked him once in the ribs. As indicated, six officers were involved in the marijuana destruction operation: Chief Deputy Miller; Deputies Sanders, Reick and Palo; Officer Becthold; and Special Agent Green. At least some evidence in the record suggests that Chief Deputy Miller was at the scene when the alleged kick supposedly occurred.[8] However, Plaintiff testified that he did not see who kicked him and the record contains no evidence revealing the identity of the assailant. There is conflicting evidence in the record about how many officers were at the scene when the alleged kick occurred. If Plaintiff's own testimony is accepted, there is

---

[8] Plaintiff cannot identify which officers, in addition to Officer Becthold, arrived at the scene at the time of his arrest. In his affidavit, Chief Deputy Miller states that, when he arrived at the scene, Plaintiff was standing upright and in handcuffs. However, Officer Becthold testified that Chief Deputy Miller arrived while Plaintiff was on the ground in a face-down position.

13

a one-in-six chance that it was Deputy Miller's foot that connected with Plaintiff's ribs.[9] The court holds that this is not enough to survive summary judgment. Plaintiff must provide the court with more than mere speculation to survive summary judgment. *See Dulany v. Carnahan*, 132 F.3d 1234, 1241 (8th Cir. 1997).

Although the court cannot find any precedential cases precisely on point, federal courts around the country have decided summary judgment motions regarding excessive force claims in which plaintiffs are unable to identify the particular officer that used excessive force against them. The rule that emerges from these cases is that a plaintiff can only survive summary judgment by offering evidence that (1) a particular officer caused the injury or (2) a particular officer stood by and failed to stop preventable harm caused by the actions of other officers, where he knew or should have known that the other officers were using excessive force. *Compare Blackmore v. City of Phoenix*, 126 F.App'x 778, 782 (9th Cir. 2005) (affirming district court's decision to grant summary judgment on an excessive force claim, where the plaintiff was unable to identify which officer dug his heel into plaintiff's back and kicked him, because "[§] 1983 liability . . . cannot be based on a group liability theory"); *Husbands v. City of N.Y.*, No. 05 Civ. 9252(NRB), 2007 WL 2454106, at *11 (S.D.N.Y. Aug. 17, 2007) (granting summary judgment on an excessive force claim, where the plaintiff could not offer any positive proof that a particular officer kicked him and there was no evidence that the officer had a realistic opportunity to stop a single, discrete kick); *Kepley v. Lantz*, No. 3:05 CV 7474, 2007 WL 2085401, *5-*7 (N.D. Ohio July 18, 2007) (granting summary judgment on excessive force claim, where plaintiff failed to identify which officer kicked him in the head once or twice during an arrest); *Paul v. City of Rochester*, 452 F. Supp. 2d 223, 228 (W.D.N.Y. 2006) (granting summary judgment on an excessive force claim where plaintiff could not

---

[9] The court notes that there is even a possibility that Plaintiff's niece, Tilleen Goings-Boucher, kicked Plaintiff.

show which officer assaulted him); *Raines v. Chenowith*, No. 1:03CV1289-JDT-TAB, 2005 WL 1115804, at *5 (S.D. Ind. Mar. 30, 2005) (granting summary judgment on an excessive force claim, because plaintiff could not identify which officer jerked her out of the car, put her in handcuffs or patted her down); *and Roberts v. Prince George's County, Md.*, 157 F. Supp. 2d 607, 609 (D. Md. 2001) (granting summary judgment for two officers in their individual capacities, because plaintiff could not identify which one struck him with a nightstick), *with Miller v. Smith*, 220 F.3d 491, 494-95 (7th Cir. 2000) (holding that a plaintiff could bring excessive force claims against two officers despite his inability to identify which officer kicked him twice in the back, punched him, stepped on his face, and yanked him around by the hair, because he could show that one officer attacked him while another officer "ignored a realistic opportunity to intervene"); *Rutherford v. City of Berkeley*, 780 F.2d 1444, 1448 (9th Cir. 1986) (holding that, even though the plaintiff could not recall whether three defendants punched and kicked him, because they were among the five or six officers who surrounded him while he was being attacked, a jury could reasonably infer that they participated in the assault), *abrogated on other grounds by Graham v. Connor*, 490 U.S. 386 (1989); *and Davis v. Hill*, 173 F. Supp. 2d 1136, 1144 (D. Kan. 2001) (holding that plaintiff could maintain § 1983 excessive force claim against law enforcement officers that were near his cell at the time he was beaten senseless, despite his inability to identify which two of the four deputies were his alleged assailants).[10] In this case, Plaintiff has presented no evidence to show that Chief Deputy

---

[10] "[C]laims brought pursuant to § 1983 sound in tort." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709 (1999). In the parlance of the common law of torts, Plaintiff has an "identification problem." *Mulcahy v. Eli Lilly & Co.*, 386 N.W.2d 67, 73 (Iowa 1986). Although the common law has evolved to remedy the identification problem under certain circumstances, no such remedy would be available to Plaintiff. For example, the alternative liability theory would be inapplicable, because Plaintiff failed to name all the actors who may have caused his injuries as defendants in

(continued…)

Miller, as opposed to one of the other officers, kicked Plaintiff. Plaintiff presents no evidence that Chief Deputy Miller saw somebody kick Plaintiff or that Chief Deputy Miller had a chance to prevent the kick from occurring. The record does not give rise to an inference that Chief Deputy Miller kicked Plaintiff or had the ability to prevent another officer from kicking Plaintiff. An officer present at the scene could easily have failed to see a single kick, much less have had an opportunity to stop a single kick from occurring. Plaintiff wants the court to allow this case to go to trial on mere speculation, which the court may not do. *Dulany*, 132 F.3d at 1241.

### 2. *Supervisor Liability*

Plaintiff alleges that an officer at the scene kicked him once in the ribs. Plaintiff seeks to hold Chief Deputy Miller liable for this single kick because of his presence at the scene and his role as a supervisory officer. Assuming, without deciding, that Chief Deputy Miller qualifies as a supervisor for purposes of § 1983,[11] the court holds that the record presents no genuine issue of material fact regarding Chief Deputy Miller's responsibility for the allegedly unconstitutional act.

---

[10](…continued)
this action. *See, e.g., id.* at 74 (holding that, to pursue an alternative liability theory, a plaintiff is "requir[ed] . . . to 'bring before the court all the actors who may have caused the injury in fact.'") (citing *Abel v. Eli Lilly & Co.*, 343 N.W.2d 164 (Mich. 1984); *see also Doe ex rel. Doe v. Baxter Healthcare Corp.*, 178 F. Supp. 2d 1003, 1014-15 (S.D. Iowa 2001) (Longstaff, J.) (declining to apply alternative liability theory where plaintiff failed to name all possible tortfeasors as defendants), *aff'd*, 380 F.3d 399 (8th Cir. 2004). Further, the alternative liability theory does not apply "where there is no proof that the conduct of more than one actor has been tortious at all." Restatement (Second) of Torts § 433B cmt. g (1965). As a consequence, Plaintiff retains the burden of proof that the tortious conduct of each defendant caused his harm. *Id.* § 433B.

[11] Other than perhaps his title, the only fact in the record that indicates that Chief Deputy Miller acted in a supervisory role is the fact that he called the other officers to the scene.

Section 1983 does not impose liability upon supervisors based on a theory of *respondent superior*. *Ottman*, 341 F.3d at 761. A supervisor incurs liability under § 1983 only "when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation." *Id*. (citing *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir.1993)). A plaintiff must show that the supervisor recklessly disregarded his constitutional rights. *Howard v. Adkison*, 887 F.2d 134, 138 (8th Cir. 1989). This requires "more than mere negligence yet less than malicious or actual intent." *Id*. (citation and internal quotation marks omitted). As a general matter, "[a] single incident, or a series of isolated incidents . . . provides an insufficient basis upon which to assign supervisory liability." *Id*. (citing *Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988)).

For liability to attach, Chief Deputy Miller, at a minimum, needed to have some sort of opportunity to take corrective action in order to prevent the violation from occurring. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (holding that a plaintiff must show an affirmative causal link between the supervisor's inaction and the constitutional injury to establish § 1983 liability). Nothing in the record, besides Chief Deputy Miller's presence at the scene, suggests that he knew of the kick or could have prevented the kick. Plaintiff does not provide any evidence that the officers at the scene had previously used excessive force, that they were prone to violence or that Chief Deputy Miller had any role in training them. A single incident of allegedly unconstitutional activity, which the supervisor had no opportunity to prevent, provides an insufficient basis for supervisory liability under § 1983.

### 3.  *Conclusion*

Accordingly, the court shall grant summary judgment in favor of Chief Deputy Miller.

## VIII. SANCTIONS

In their Reply, Defendants urge the court to consider sanctioning Plaintiff's counsel, Ms. Judith M. O'Donohoe, under Federal Rule of Civil Procedure 11. Among other things, Defendants assert that Plaintiff's counsel instituted and prosecuted this action in bad faith, repeatedly suborned perjury and generally "played fast and loose with the truth, knowing what the truth was." Reply (docket no. 80), at 10. For example, Defendants claim that Attorney O'Donohoe knowingly made misrepresentations of material fact to the court in the now-stricken "Resistance to Chickasaw County [sic] Second Material Fact Statement" (docket no. 79-1) and "Memorandum in Support of Resistance to Chickasaw County's [sic] Second Motion [sic] Summary Judgment" (docket nos. 79-6 through 79-7). Specifically, Attorney O'Donohoe allegedly told the court that a 2006 search was warrantless when she knew it was not warrantless.

Defendants also argue that Plaintiff's counsel has a history of unethical behavior. Defendants point out that another judge of this court recently sanctioned Attorney O'Donohoe and her client $15,000 jointly and severally for pursuing a frivolous action. *See Freese v. Hawkeye Cmty. Coll.*, 149 F.App'x 540, 542-43 (8th Cir. 2005) (affirming sanction). Defendants also point out that the Iowa Supreme Court has reprimanded Attorney O'Donohoe for her unethical conduct. *Comm. on Prof'l Ethics & Conduct v. O'Donohoe*, 426 N.W.2d 166, 166-69 (Iowa 1988).[12]

The court finds that the issue of sanctions merits further consideration. Under the court's inherent powers, Federal Rule of Civil Procedure 11, Federal Rule of Civil Procedure 56(g) and/or 28 U.S.C. § 1927, in the near future the court shall institute show cause proceedings against Attorney O'Donohoe and her clients in this action, David

---

[12] Two justices dissented and urged a ninety-day suspension of Attorney O'Donohoe's law license. *See O'Donohoe*, 426 N.W.2d at 169. The dissenting justices believed Attorney O'Donohoe intentionally falsified a warranty deed in order to obtain a fraudulent advantage for her clients. *Id.*

Goings, Lewine Boucher-Goings and Juanita Goings. If the court finds sanctions against Attorney O'Donohoe are warranted, the court shall order Attorney O'Donohoe to show cause why she should be permitted to continue to practice in the Northern District of Iowa. *See* LR 83.1.g.

## *IX. DISPOSITION*

**IT IS THEREFORE ORDERED:**

(1) Plaintiff David Goings's resistance materials (docket nos. 78 and 79) are **STRICKEN**;

(2) The Motion (docket no. 71) is **GRANTED**;

(3) Plaintiff David Goings's Excessive Force Claim, the only remaining claim in the Complaint (docket no. 1), is **DISMISSED WITH PREJUDICE**;

(4) Plaintiffs David Goings, Lewine Boucher-Goings and Juanita Goings shall bear Defendants' costs;

(5) Orders to show cause against Attorney Judith M. O'Donohoe and Plaintiffs David Goings, Lewine Boucher-Goings and Juanita Goings regarding sanctions shall issue in the near future;

(6) The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants, to cancel the final pretrial conference and trial, and to close this case for administrative purposes only.

**IT IS SO ORDERED.**

**DATED** this 10th day of March, 2008.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA